IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

KARI T. MORRISSEY, as Personal Representative
of the Estate of MICHAEL CRESPIN, deceased,

　　　　Plaintiff,

v.                                                                              CIV No. 08-246 WJ/RHS

ROBERT ULIBARRI,
HARVEY J. FEATHERSTONE, M.D.,
MONIQUE GIBSON, M.D., STACY COREY,
DANNA TAPIA , and ELIZABETH BURNETT,
in their individual capacities, and WEXFORD
HEALTH SOURCES, INC.,

　　　　Defendants.

### FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS, MEDICAL MALPRACTICE, TORT CLAIMS, AND DAMAGES

Plaintiff Kari T. Morrissey, by and through her attorneys, Kennedy and Han, P.C., hereby brings this Complaint for violation of civil rights under 42 U.S.C. § 1983, and for medical malpractice, negligence, gross negligence, recklessness, and wrongful death, under state tort law, and alleges as follows:

### JURISDICTION AND VENUE

1.　　This Court has jurisdiction over this action under 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. §§ 1343 and 1345, with pendent jurisdiction over the state law claims.

2.　　Venue is proper in this District as Defendants are all residents of New Mexico and all of the acts complained of occurred in New Mexico. The cause of action arose in New Mexico.

### PARTIES

3.　　Plaintiff Kari T. Morrissey is the Personal Representative of the Estate of Michael Crespin, who was at all relevant times a resident and citizen of the state of New Mexico.

4.      Defendant Wexford Health Sources, Inc. ("Wexford") is a Florida corporation based in Pittsburgh, Pennsylvania. Until July 2007, when it was terminated for cause, Wexford was the contractor for the State of New Mexico providing medical care to inmates at New Mexico correctional institutions, including the Central New Mexico Correctional Facility ("CNMCF") in Los Lunas, New Mexico. Wexford was awarded the contract to provide such services in 2004.

5.      Defendant Robert Ulibarri was at all relevant times the Warden of CNMCF.

6.      Defendant Dr. Harvey J. Featherstone and Defendant Monique Gibson were, at all relevant times, medical doctors who were responsible for providing medical care and treatment to Plaintiff during his detention at CNMCF.

7.      Upon information and belief, Defendants Danna Tapia and Stacy Corey were in charge of scheduling patient travel or are physician assistants or nurses who at all relevant times provided healthcare services or related services at CNMCF.

8.      Upon information and belief, Elizabeth Burnett was a registered nurse ("RN") who at all relevant time provided healthcare services or related services at CNMCF.

9.      The individual Defendants are sued in their individual capacities.

10.     At all times material to this Complaint, the Defendants acted under color of state law and within the scope of their duties and employment.

**FACTUAL BACKGROUND**

11.     Michael Crespin ("Decedent") was an inmate at the Central New Mexico Correctional Facility in Los Lunas, New Mexico ("CNMCF"). Decedent was serving a three year sentence for a drug conviction during 2006 and 2007.

12.     In late December 2005, Decedent was arrested and booked into the Metropolitan Detention Center in Albuquerque, New Mexico ("MDC").

13. Shortly after his arrest, and while incarcerated at MDC, Decedent complained of abdominal pain.

14. Decedent was taken to the University of New Mexico Hospital ("UNMH").

15. At UNMH, Decedent was diagnosed with colon cancer requiring immediate surgery.

16. Decedent underwent surgery for colon cancer at UNMH in early January of 2006.

17. The surgery left Decedent with a colostomy bag. Decedent's treating physicians at UNMH also prescribed a number of medications and chemotherapy.

18. Decedent's physicians at UNMH also determined that he would likely need additional surgery.

19. Decedent was transferred to CNMCF in early March 2006, during the course of his chemotherapy treatments.

20. Upon arrival at CNMCF, and during his processing in the Receiving and Diagnostic Unit, Decedent advised CNMCF infirmary personnel and others of his serious medical condition.

21. After processing, Decedent was placed in the general population. He was confined to his unit.

22. Despite his numerous requests for treatment, Decedent was kept isolated from CNMCF medical personnel despite CNMCF having a prison hospital.

23. Despite Decedent's repeated requests, and the requests of his treating physicians at UNMH, CNMCF staff and Wexford essentially lost track of Decedent for purposes of his cancer treatment.

24. Over a period of several months, Decedent missed approximately 14 to 16, or more, medical appointments at UNMH.

25. Most of the missed appointments were for chemotherapy at UNMH.

26. Upon information and belief, Defendant Featherstone was a doctor with Wexford at CNMCF, and was responsible for Decedent's medical care.

27. During this time, Decedent's treating physician and staff at UNMH became very concerned at CNMCF and Wexford's indifference to and neglect of Decedent's condition.

28. Medical staff at UNMH repeatedly called the warden and others at CNMCF and expressed concern over the number of chemotherapy appointments and other appointments Decedent had missed. CNMCF and Wexford were advised by UNMH personnel of the critical nature of these appointments to Decedent's health and that continuing his regular treatments was literally a life or death matter.

29. During this period, Decedent repeatedly made desperate pleas to UNMH, CNMCF and Wexford personnel for assistance in obtaining his critically important medical treatment.

30. The prison medical system, run by Wexford, refused to discharge its responsibilities in a reasonable and competent manner. Upon information and belief, Drs. Featherstone and Gibson oversaw all medical activities of Wexford, including patient care and its hospital conditions.

31. During the spring of 2006, doctors at the prison promised UNMH personnel that they would correct the situation, and arrange for Decedent to get to his treatments on a regular basis. This was not done.

32. In early August 2006, Holly C. Rice, a Nurse Practitioner at UNMH, contacted Dr. Featherstone at CNMCF. Rice advised Dr. Featherstone that stopping Decedent's treatments would result in his untimely death. Upon information and belief, Dr. Yehuda Pratt, Decedent's treating physician, had a similar conversation with Warden Ulibarri on an earlier occasion, and had also spoken to other CNMCF or Wexford personnel about the urgent need for Decedent to make it to his appointments.

33. In August 2006, Decedent was finally transferred to the prison hospital, and began receiving his chemotherapy at UNMH, and attending other appointments at UNMH.

34. Even after August 2006, however, Decedent missed additional scheduled appointments due to the deliberate indifference of Defendants.

35. The prison hospital was filthy, and on at least one occasion, Decedent was placed on sheets which appeared to have dried blood on them.

36. After he was transferred to the prison hospital, Decedent suffered an infected kidney.

37. In approximately September of 2006, the inside of the prison hospital was painted, and new tile floors were installed.

38. In the fall of 2006, another tumor was discovered in Decedent's abdomen.

39. Decedent's treating physicians at UNMH strongly recommended that the tumor be removed, and that Decedent's colostomy be taken down.

40. Wexford denied Decedent treatment to remove the new tumor.

41. Wexford denied treatment for Decedent's colostomy to be taken down.

42. During the Fall of 2006, Decedent continued to miss critical appointments.

43. Decedent finally underwent surgery to take down the colostomy, and remove the tumor in approximately January 2007. The surgery took place only after investigative reporters had commenced review of Decedent's case and multiple other and serious instances of Wexford's deliberate indifference in providing medical services.

44. Decedent's condition was severely aggravated due to the actions and omissions of the Defendants, and subsequently died on or about July 2, 2008.

45. Decedent suffered severe and repeated physical and mental pain and suffering due to the actions and omissions of Defendants.

46.     Decedent's life was significantly shortened, in addition to his unnecessary pain and suffering, due to the actions and omissions of the Defendants.

47.     Wexford failed to properly provide and/or refused to provide medical services to Decedent.

48.     Wexford, Dr. Harvey Featherstone, Dr. Monique Gibson, Stacey Corey, Danna Tapia and Elizabeth Burnett were grossly negligent, maliciously and deliberately indifferent in providing medical services to Decedent.

## COUNT I – 42 U.S.C. SECTION 1983 CLAIMS UNDER EIGHTH AMENDMENT AGAINST DEFENDANT WEXFORD

49.     Plaintiff incorporates paragraphs 1 through 49 as though fully set forth herein.

50.     The Eight Amendment prohibits cruel and unusual punishment against prisoners. This restriction encompasses a duty to provide necessary medical care to prisoners.

51.     Before and during the incidents forming the basis of Plaintiff's Complaint, the Defendants knew of Decedent's serious medical condition and they were informed that Decedent's medical needs were of the most serious and obvious kind.

52.     As set forth above, Defendant Wexford maintained a custom, practice and policy of indifference to the rights of Decedent and other CNMCF inmates to provide adequate medical treatment and affirmatively and proximately caused Decedent constitutional injury.

53.     Defendant Wexford's acts were intentional, malicious, sadistic, willful, wanton, obdurate, and in gross and in reckless disregard of Decedent's Eighth Amendment constitutional rights.

54.     Defendant Wexford's actions and omissions as set forth above proximately caused Decedent damages and injuries as set forth above, including but not limited to pain and suffering, severe psychological and emotional distress, loss of chance of greater lifespan, and loss of chance of

higher quality of life.

WHEREFORE, Plaintiff Kari T. Morrissey, as Personal Representative of the Estate of Michael Crespin, asks for compensatory and punitive damages against Defendant Wexford, together with an award of reasonable attorney's fees and costs.

### COUNT II – SECTION 1983 CLAIMS UNDER EIGHTH AMENDMENT AGAINST INDIVIDUAL DEFENDANTS

55.    Plaintiff incorporates paragraphs 1 through 55 as though fully set forth herein.

56.    The Eighth Amendment prohibits cruel and unusual punishment against prisoners. This restriction encompasses a constitutional duty to provide necessary medical care to prisoners.

57.    Defendants Ulibarri, Burnett, Featherstone, Gibson, Corey and Tapia as set forth above violated Decedent's rights under the Eighth Amendment to the United States Constitution to be free from cruel and unusual punishment.

58.    The acts of the above named defendants were intentional, malicious, sadistic, willful, wanton, obdurate and in gross and in reckless disregard of Decedent's constitutional rights.

59.    Further, Decedent's medical needs were of the most serious and obvious kind.

60.    The above-named Defendants deliberately and consciously ignored Decedent's serious medical needs by failing to transport him to get his chemotherapy and other medical procedures as prescribed by his physicians at UNMH thereby causing harm to Decedent's health and welfare.

61.    The individual Defendant's acts proximately caused Decedent's damages and injuries. These damages include past pain and suffering, past psychological and emotional distress, loss of chance of longer life, and loss of chance of better quality of life.

WHEREFORE, Plaintiff Kari T. Morrissey, as Personal Representative of the Estate of Michael Crespin, asks for compensatory and punitive damages against Defendants Ulibarri,

Featherstone, Gibson, Corey, Tapia, and Burnett, together with an award of reasonable attorney's fees and costs.

### COUNT III – CLAIMS FOR NEGLIGENT, GROSSLY NEGLIGENT AND RECKLESS OPERATION OF A PUBLIC AND MEDICAL FACILITY AGAINST DEFENDANTS ULIBARRI AND WEXFORD

62. Plaintiff incorporates paragraphs 1 through 62 as though fully set forth herein.

63. Defendants Ulibarri and Wexford had a duty to exercise reasonable care for prisoners'' safety in the operation of CNMCF and its medical facility.

64. Defendants Ulibarri and Wexford failed to exercise such care, by failing to ensure that Decedent received constitutionally adequate medical care for his obvious and serious medical needs.

65. Defendants failed to provide training, supervision, and to enforce procedures to prevent conduct such as that complained of here.

66. The Defendants' actions were in complete derogation of any duty in the proper administration of a correctional and medical facility, and constituted negligent, grossly negligent, and reckless operation of a public facility, *i.e.*, CNMCF and its hospital for which liability is waived pursuant to NMSA 1978, section 41-4-6.

67. Defendants' negligence, gross negligence, and recklessness as set forth above proximately caused Decedent damages and injuries as set forth above, including but not limited to, physical injury, physical pain and suffering, expenses for medical and other care and treatment, and psychological and emotional distress.

WHEREFORE, Plaintiff, Kari T. Morrissey, as Personal Representative of the Estate of Michael Crespin, asks for compensatory damages against Defendants Ulibarri and Wexford, together with an award of costs.

### COUNT IV – CLAIM AGAINST DEFENDANTS FEATHERSTONE, GIBSON, AND WEXFORD FOR MEDICAL MALPRACTICE

68. Plaintiff incorporates paragraphs 1 through 68 as though fully set forth herein.

69. In treating Decedent, Defendants Featherstone, Gibson and Wexford had a duty to possess and apply knowledge, skill, and care conforming to proper standards of medical practice recognized in the community and under the circumstances in question.

70. Defendants breached these duties as set forth above.

71. Defendants' actions and omissions as set forth above proximately caused Decedent damages and injuries as set forth above, including but not limited to, physical injury, physical pain and suffering, expenses for medical and other care and treatment, and psychological and emotional distress.

72. Plaintiff, as Personal Representative of Michael Crespin's estate, is entitled to recover from these Defendants under the New Mexico Medical Malpractice Act, and/or the New Mexico Tort Claims Act.

WHEREFORE, Plaintiff, Kari T. Morrissey, as Personal Representative of the Estate of Michael Crespin, requests compensatory damages and punitive damages against Defendants, with costs associated therewith.

### COUNT V – CLAIMS AGAINST ALL DEFENDANTS FOR NEGLIGENCE, GROSS NEGLIGENCE, AND RECKLESSNESS RESULTING IN WRONGFUL DEATH

73. Plaintiff incorporates paragraphs 1 through 73 as though fully set forth herein.

74. Defendants had a duty to exercise reasonable care in providing medical care, treatment, and services to detainees at CNMCF and its medical facility.

75. Defendants breached this duty with regard to Decedent, as described herein, by failing to provide Decedent with adequate medical care, despite his obvious and serious medical

9

needs.

76. The acts and omissions of Defendants, which were in complete derogation of any known standard for the proper provision of health care services, and in complete disregard of Decedent's rights, constituted negligence, gross negligence, and recklessness.

77. The acts and omissions of Defendant Wexford's employees, as set forth herein, occurred while the employees were acting within the course and scope of their employment and duties, for which Defendant Wexford is liable.

78. The negligence, gross negligence, and recklessness of Defendants, as set forth herein, proximately caused Decedent damages and injuries, including pain and suffering, psychological and emotional distress, and wrongful death.

WHEREFORE, Plaintiff, Kari T. Morrissey, as Personal Representative of the Estate of Michael Crespin, seeks compensatory damages, including, but not limited to, damages for Decedent's pain, suffering, and emotional distress and the value of Decedent's life, and punitive damages, plus costs and attorney's fees, against all Defendants.

## JURY TRIAL DEMAND

79. Plaintiff hereby demands a trial by jury on all counts so triable.

Respectfully submitted,

**KENNEDY & HAN, P.C.**

/s/ Minal P. Unruh
MARY Y. C. HAN
GRIETA A. GILCHRIST
MINAL P. UNRUH
Attorneys for Plaintiff
201 Twelfth Street, N.W.
Albuquerque, NM  87102
Telephone: (505) 842-8662