# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

KARI T. MORRISSEY, as Personal
Representative of the Estate of MICHAEL
CRESPIN, deceased,

       Plaintiff,

v.                                           No. 08-CV-246 WJ/RHS

ROBERT ULIBARRI, HARVEY J. FEATHERSTONE,
M.D., MONIQUE GIBSON, M.D., STACEY COREY,
DANNA TAPIA, and ELIZABETH BURNETT, M.D.,
in their individual capacities, WEXFORD HEALTH
SOURCES, INC., CHRISTINE VALLEJOS and
JOSEPH ROMERO,

       Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT ROBERT ULIBARRI'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court upon Defendant Robert Ulibarri's Motion for

Summary Judgment (Doc. 95). While he was an inmate in New Mexico state prison, Michael

Crespin was diagnosed with colon cancer. Over the course of several months, Crespin missed

numerous medical appointments at the University of New Mexico Hospital ("UNM Hospital")

where he was being treated. Crespin sued the Defendants for the violation of his Eighth

Amendment right to be free from cruel and unusual punishment and for various tort claims in

violation of New Mexico tort law. In July 2008, Crespin died and Kari Morrissey entered her

appearance as the personal representative of Crespin's estate.[1] Defendant Robert Ulibarri, a

_____

[1]Michael Crespin passed away on or about July 2, 2008. *See Suggestion of Death* (Doc.
25) (filed July 7, 2008). Consequently, plaintiff's counsel sought and received an Order to
amend the Complaint and allow Crespin's personal representative, Kari T. Morrissey, to proceed

former warden of the prison in which the decedent was housed, subsequently filed this Motion for Summary Judgment. Plaintiff failed to respond to Defendant's Motion by the applicable deadline. Because Defendant Ulibarri has met his initial burden of production as required by Rule 56 of the Federal Rules of Civil Procedure, and after holding a hearing on this motion on April 27, 2010, the Court GRANTS Defendant Ulibarri's Motion for Summary Judgment.

## BACKGROUND

In 2005, Michael Crespin was arrested on various drug charges and booked at the Metropolitan Detention Center in Albuquerque, New Mexico. Shortly after his arrival, Crespin complained of abdominal pain. In early 2006, Doctors at the University of New Mexico Hospital ("UNM Hospital") diagnosed him with colon cancer and prescribed various medications as well as a series of chemotherapy treatments.

In March 2006, Crespin was transferred to Central New Mexico Correctional Facility in Los Lunas, New Mexico ("CNMCF") to begin his three-year sentence. Initially, Crespin was placed in the general population pod. While in general population, Crespin missed multiple appointments—possibly as many as a dozen—at UNM Hospital over the course of several months. In August 2006, Crespin was moved to the long-term care unit in the prison complex. He was able to attend his appointments at UNM Hospital with more regularity, but he still missed occasional appointments.

Wexford Health Sources ("Wexford"), a private company, had previously contracted with the State of New Mexico to provide medical care to inmates at CNMCF. At all relevant times, Wexford staffed and operated the medical facility on CNMCF's grounds, including the

---

with a claim for wrongful death against the Defendants. *Order Granting Motion to Substitute Plaintiff and for Leave to Amend* (Doc. 43) (entered Oct. 8, 2008).

hospital and long-term care unit.  Wexford provided medical care to all inmates, regardless of

whether they were housed in a general population pod or the long-term care unit.  Occasionally,

inmates would need to attend off-site medical appointments.  When an inmate needed to attend

an appointment at UNM Hospital, the patient services assistant at UNM Hospital would contact

Wexford's off-site coordinator to schedule the appointment.[2]  Then, the off-site coordinator

would send notice of the scheduled appointment to the prison transport department.  The

transportation department, in turn, would ensure that the inmate was transported to his scheduled

appointment in a safe and timely manner.

Defendant Ulibarri became Warden of CNMCF in mid-November 2006—eight months

after Crespin began his sentence at CNMCF and three months after Crespin had been moved to

the prison hospital.[3]  In his Complaint, Plaintiff alleges that Defendant Ulibarri did not allow

Crespin to be sufficiently treated for colon cancer.  Specifically, Plaintiff alleges that Defendant

knew that Crespin was repeatedly missing his appointments, including chemotherapy

appointments, at UNM Hospital, but took no action to fix the problem.  Based upon these

allegations, Plaintiff sued Defendants under 42 U.S.C. § 1983 and the New Mexico Tort Claims

Act, NMSA 1978 § 41-4-1 *et seq.,* alleging that Defendants violated decedent's Eighth

Amendment right to be free from cruel and unusual punishment and that Defendants were

---

[2] At all relevant times, Debbie Suttie worked as UNM Hospital's patient services assistant, *see* Defendant's Exhibit C, and Stacy Corey worked as Wexford's off-site coordinator.

[3] In his Response, Plaintiff asserts that Ulibarri began his tenure as Warden on October 21, 2006.  Because that response was filed so late, however, I will not accept this statement of fact.  Furthermore, in Plaintiff's Response to the separate Motion for Summary Judgment filed by Defendants Vallejos and Romero, Plaintiff admits that Defendant Vallejos served "as acting warden until the arrival of Defendant Ulibarri as warden at some point in November 2006." Doc. 144, at 6-7.

negligent in their medical care of decedent.

On July 17, 2009, Defendant Ulibarri filed the instant Motion for Summary Judgment. At the parties' joint request, this Court gave Plaintiff until September 14, 2009 to respond (Doc. 100). Without explanation, Plaintiff filed her response on October 16, 2009 (Doc. 114)—more than a month after the agreed-upon and Court-ordered deadline. In his Reply, Defendant Ulibarri objected to this tardy filing and asked the Court to disregard Plaintiff's untimely Response. Plaintiff did not request leave to file a surreply in order to respond to Defendant's objection.[4]

## SUMMARY JUDGMENT STANDARD

<u>Failure to Respond</u>. Under Rule 7.1(b) of the District of New Mexico's Local Rules, "[t]he failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion." *See also Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 (10th Cir. 2002); *Niemyjski v. City of Albuquerque*, 379 F. Supp. 2d 1221, 1228 (D.N.M. 2005). The Local Rules of the District of New Mexico are not precatory guidelines; they are mandatory strictures which, if not followed, subject a litigant's suit to dismissal or entry of summary judgment. *See, e.g., Archuleta v. Bd. of County Comm'rs*

---

[4] In her Response, under a section titled "Rule 56(f) Considerations," Plaintiff argues that she has been unable to present sufficient facts partly because former Wardens Romero and Vallejos had not yet filed their answers to her Amended Complaint naming them as defendants. Because Plaintiff had not been able to depose either Romero or Vallejos, she asked this Court to continue Defendant Ulibarri's Motion for Summary Judgment until discovery has been completed. The Court construes this as a request under Rule 56(f) for a postponement of the Court's consideration of this Motion. If this is the reason that Plaintiff's Response was filed a month late, then Plaintiff should have requested an extension from this Court *before* the deadline passed. Furthermore, discovery has since been completed and Plaintiff has not filed any supplemental briefing with respect to Defendant Ulibarri. Accordingly, the Court will rule on Defendant Ulibarri's Motion for Summary Judgment as it stands.

*of San Miguel County, New Mexico* (D.N.M. Feb. 3, 2005) (unpublished), at 2-3 (granting

Defendant's motion to strike plaintiff's untimely response to motion to dismiss, where plaintiff's

response was filed 22 days after motion).  According, Defendant Ulibarri's Statement of

Material Facts provided in his Motion for Summary Judgment are uncontested and deemed as

admitted.

Under Rule 56 of the Federal Rules of Civil Procedure, the moving party *always* bears

the initial responsibility of informing the district court of the basis for its motion and identifying

those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue

of material fact.  *Celotex Corp. v. Catrett*, 477 U.S 317 (1986) (emphasis added).  Summary

judgment is not proper merely because Plaintiff failed to file a response in time.  The moving

party must first meet its initial responsibility of demonstrating that no genuine issue of material

fact exists and that it is entitled to summary judgment as a matter of law.  *Id.*  Rule 56(e)

specifically contemplates the consequences of failing to oppose a summary judgment motion:

> When a motion for summary judgment is made and *supported* as provided in this
> rule, an adverse party may not rest upon the mere allegations or denials of the
> adverse party's pleadings, but the adverse party's response, by affidavits or as
> otherwise provided by this rule, must set forth specific facts showing that there is
> a genuine issue for trial. If the party does not so respond, summary judgment, if
> *appropriate,* shall be entered against the adverse party.

(emphasis added).  Accordingly, summary judgment is appropriate under Rule 56(e) only when

the moving party has met its initial burden of production under Rule 56(c).  If the evidence

produced in support of the summary judgment motion does not meet this burden, "summary

judgment must be denied *even if no opposing evidentiary matter is presented.*"  *Adickes v. S.H.

Kress & Co.*, 398 U.S. 144, 160 (1970) (emphasis added).

Qualified Immunity.  When a defendant moves for summary judgment on the basis of qualified immunity, the plaintiff bears a heavy two-fold burden.  *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).  The plaintiff must put forward evidence showing (1) that the defendant violated plaintiff's constitutional rights, and (2) the right at issue was clearly established at the time of violation.  *Id.*  If the plaintiff fails to establish either part of the two-part inquiry, the court must grant the defendant's qualified immunity.  *Id.*  Courts have discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009).  Because the Plaintiff has not shown that Defendant Ulibarri violated Mr. Crespin's Eighth Amendment rights, this Court need not address the issue of whether any violation was clearly established.

## ANALYSIS

### I.      Eighth Amendment Claims

Plaintiff first asserts that Defendant violated his right under the Eighth Amendment to be free from cruel and unusual punishment.  A prison official violates the Eighth Amendment when he acts with deliberate indifference toward a substantial risk of serious harm to the inmate. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  The Supreme Court has likened deliberate indifference to criminal recklessness.  To be guilty of deliberate indifference, a prison official must "know[] of and disregard[] an excessive risk to inmate health or safety."  *Id.* at 837. Furthermore, the prison official must have been personally involved in the Eighth Amendment violation.  *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.").  Plaintiff

cannot succeed on his claims merely by showing that the officials were in charge of other state actors who violated decedent's Eighth Amendment rights. *Spencer v. Landrith*, 315 Fed.Appx. 62, 65 (10th Cir. 2009). In order to survive summary judgment on his Eighth Amendment claim, the Plaintiff must show that Defendant Ulibarri intentionally disregarded an excessive risk of danger to the decedent. If the evidence shows that Ulibarri either did not know of the risk or took no action disregarding that risk, then Ulibarri is entitled to summary judgment in his favor.

Plaintiff contends that Ulibarri violated the decedent's Eighth Amendment rights, but has not put forward any evidence that Ulibarri knew of Crespin's medical condition or knew that Crespin was missing his medical appointments. The mere fact that Ulibarri was warden during some period of decedent's incarceration is insufficient to show deliberate indifference. *See Spencer*, 315 Fed. Appx. 62, 65 (10th Cir. 2009) ("[I]t is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation. Rather, the plaintiff must establish a deliberate, intentional act by the supervisor to violate constitutional rights.") (quotation omitted). Plaintiff's Complaint is replete with generic allegations concerning Crespin's treatment. However, none of the assertions provide any evidence that Defendant Ulibarri *actually knew* about Crespin's history of missed appointments. Moreover, according to the facts set forth in Defendant Ulibarri's motion, Ulibarri never received any complaints about Crespin's medical care during the time he worked as Warden of CNMCF. Def. Ulibarri's Mot. for Summary Judgment, ¶ 4. Elfido Crespin, the decedent's brother, testified that he called the prison and spoke with the "head honcho" to complain about his brother's treatment. Defendant's Exhibit B, at 69. However, when asked whether he spoke with Defendant Ulibarri, Elfido Crespin responded that he did not believe so. *Id.* ("I would

remember that last name because we had Ulibarris across the street. So I don't think so."). Debbie Suttie, the patient-services assistant at UNM Hospital, testified that she communicated exclusively with Wexford and never contacted Ulibarri about any problems with Crespin's appointments. Defendant's Exhibit C, at 47. In fact, Ms. Suttie testified that she does not even know who Ulibarri's is. *Id.* at 48. Wexford's off-site coordinator, Defendant Stacy Corey, who arranges inmates' transport to off-site medical facilities, testified that she never spoke with Ulibarri about Crespin's transportation issues. Defendant's Exhibit D, at 28. Defendant Dr. Harvey Featherstone, a doctor employed by Wexford in CNMCF's long-term care unit, testified that he never spoke with Mr. Ulibarri about problems transporting inmates to off-site medical treatment, nor did he give Mr. Ulibarri any written reports or correspondence concerning Crespin's case. Def. Ulibarri's Mot. for Summary Judgment, ¶¶ 12-13; Defendant's Exhibit E, at 48. Finally, Dr. Robert Greifinger, Plaintiff's expert witness, testified that he had no reason to believe that Warden Ulibarri was deliberately indifferent to Crespin's condition. Defendant's Exhibit G, at 100-101 (noting that the missed appointments occurred from March 2006 to October 2006 and that he knew of no missed appointments after Ulibarri's tenure as warden began in mid-November 2006). Because Plaintiff has failed to put forth any evidence that Ulibarri acted with deliberate indifference, I find that Ulibarri did not violate Mr. Crespin's Eighth Amendment rights. Accordingly, Ulibarri is entitled to qualified immunity.[5]

---

[5] For purposes of completeness, I note that I would reach the same conclusion even if I had considered Plaintiff's late response and supporting evidence. In her Response, Plaintiff alleges that Defendant Ulibarri held weekly staff meetings which were attended by a Wexford representative, that Defendant Ulibarri walked through the long-term care unit every week, and that Defendant Ulibarri was familiar with Crespin. None of these general allegations, however, suggest that Ulibarri actually knew about Crespin's colon cancer or knew that Crespin was repeatedly missing appointments at UNM Hospital. In fact, Ulibarri testified that, while he saw Crespin during his weekly rounds of the long-term care unit, he did not generally know the

**II.      New Mexico Tort Claims Act**

In addition to the Eighth Amendment claims, Plaintiff is suing Defendant Ulibarri for medical malpractice, negligence, gross negligence, recklessness and wrongful death under the New Mexico Tort Claims Act, NMSA 1978 § 41-4-1 *et seq*.  Plaintiff's state tort claims fail as a matter of law because the conduct of which Plaintiff complains is subject to Mr. Ulibarri's sovereign immunity as a state actor.  The New Mexico Tort Claims Act grants all government entities and their employees general immunity from tort actions, but waives that immunity in certain specified circumstances.  *See* § 41-4- 4; *Ward v. Presbyterian Healthcare Services*, 72 F.Supp.2d 1285, 1292 (D.N.M. 1999).  In her Complaint, Plaintiff asserts that these claims are proper under § 41-4-6 of the New Mexico Tort Claims Act, which waives the State's immunity concerning the operation and maintenance of buildings, public parks, machinery, equipment and furnishings.  Pl's Second Am. Compl., ¶ 68.  Despite Plaintiff's assertions, New Mexico case law holds that the waiver found in § 41-4-6 does not apply to the types of claims alleged by Plaintiff in this case.

Section 41-4-6 waives the State's immunity for claims based on "the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any

---

medical conditions of the inmates.  Plaintiff's Exhibit 2, at 32 ("I don't get the information specific to their illness based on HIPPA and all those other [federal privacy laws].").  Plaintiff also alleges that Defendant Ulibarri received information about Crespin's missed appointments from UNM Hospital staff members.  Again, however, this assertion is not supported by the evidence.  Plaintiff attaches one of Crespin's medical reports from UNM Hospital dated November 21, 2006 in which it states that the records will be faxed to the new warden, Mr. Ulibarri.  Exhibit 8, at 2 ("Additionally we were told that there is a new warden, Robert Ulibarri, and a copy of these reports will be faxed to him as well as soon as dictation is complete.").  Plaintiff has not put forth any evidence that Ulibarri actually received the reports, or, even if he did receive them, that Crespin missed any additional appointments after that date.

building, public park, machinery, equipment or furnishings." *Id.* For the waiver to apply, the

negligent "operation or maintenance" must create a dangerous condition that threatens the general

public or a class of users of the building. *See Espinoza v. Town of Taos*, 120 N.M. 680, 683, 905

P.2d 718, 721 (1995) ("[T]he critical question is whether the condition creates a potential risk to

the general public."); *Castillo v. County of Santa Fe*, 107 N.M. 204, 207, 755 P.2d 48, 51 (1988)

(holding that the waiver applies because the condition threatened the residents of the public

building and their invitees).

Here, the individual medical providers responsible for Crespin's treatment were

employees of Wexford, not CNMF. These facts are very similar to the facts in *Lessen v. City of

Albuquerque*, 2008-NMCA-085, 144 N.M. 314, 187 P.3d 179, where the Court found that the

waiver of immunity did not apply when a private contractor, rather than the prison itself, operated

the medical facility. *Lessen*, 2008-NMCA-085, ¶ 31. Plaintiff offers no distinction between the

instant case and *Lessen* and the Court can find none. Plaintiff has also failed to provide any

evidence that Ulibarri created a dangerous condition to the general prison population at CNMF

through Wexford's alleged treatment of Crespin. In *Archibeque v. Moya*, 116 N.M. 616, 620 866

P.2d 344, 348 (1993), the New Mexico Supreme Court cautioned that "[r]eading [§] 41-4-6 to

waive immunity every time a public employee's negligence creates a risk of harm for a single

individual would subvert the purpose of the [Tort Claims Act], which recognizes that

government, acting for the public good, should not have the duty to do everything that might be

done, and limits government liability accordingly." *See also Callaway v. N.M. Dep't of Corr.*, 17

N.M. 637, 643, 875 P.2d 393, 399 (Ct.App.1994) ("While a segment of the population at risk

might justify waiver of immunity under Section 41-4-6, a situation in which a single inmate is put

at risk is not comparable.").  Because Plaintiff does not dispute that Wexford operated the

medical facility at CNMF and provides no evidence that any other inmates besides Crespin were

at risk from Defendant's allegedly negligent actions, Plaintiff cannot state a viable tort claim

against Warden Ulibarri under 41-1-6.[6]

Furthermore, although this issue was not raised by either party, Defendant Ulibarri enjoys

immunity to state tort claims brought in federal court under the Eleventh Amendment—in

addition to the immunity granted him by the New Mexico Tort Claims Act.  *See Edelman v.*

*Jordan,* 415 U.S. 651, 662-633 (1974) (noting that Eleventh Amendment precludes suit against an

unconsenting state in federal court).  Therefore, even if § 41-4-6 of the New Mexico Tort Claims Act

waives the State's legislatively granted immunity with respect to tort claims brought in *state* court,

that provision does not waive the State's Eleventh Amendment immunity from suit in *federal* court.

A separate provision of the New Mexico Tort Claims Act specifically states that nothing in the Act

"shall be construed . . . as a waiver of the state's immunity from suit in federal court under the

eleventh amendment to the United States constitution."  N.M. STAT. ANN. § 41-4-4(F) (1978).  *See*

*also* § 41-4-18A ("Exclusive original jurisdiction for any claim under the Tort Claims Act shall be in

the district courts of New Mexico.").  As the United States Supreme Court has noted, a State "does

not consent to suit in federal court merely by consenting to suit in the courts of its own creation."

*College Savings Bank v. Fl. Prepaid Postsecondary Education Expense Bd.*, 527 U.S. 666, 675

(1999).  The New Mexico Tort Claims Act, to the extent it applies, clearly waives the State's

---

[6]Plaintiff did not raise any other statutory waivers of immunity under the Tort Claims Act
in her Complaint.  In her tardily filed Response, and at the hearing on this Motion, Plaintiff
raised an additional waiver of immunity argument under Section 41-4-9.  Even if the Court were
inclined to entertain this argument, the Court would still conclude that Ulibarri is entitled to
immunity under the Eleventh Amendment as discussed below.

immunity to suit only in state court.  *See Ward*, 72 F.Supp.2d. at 1293 (D.N.M. 1999) (noting that

nothing in the New Mexico Tort Claims Act waives the State's Eleventh Amendment immunity from

suit in federal court); *Bishop v. John Doe 1*, 902 F.2d 809, 810 (10th Cir. 1990) (same).  For this

additional reason, Defendant Ulibarri is entitled to Eleventh Amendment sovereign immunity

with respect to Plaintiff's state law tort claims.

## CONCLUSION

Because the Plaintiff has not shown that Defendant Ulibarri violated Plaintiff's Eighth

Amendment rights, or that a waiver of immunity is proper, Defendant is entitled to qualified and

sovereign immunity and summary judgment shall be entered in Defendant's favor.

**SO ORDERED.**

_____

UNITED STATES DISTRICT JUDGE