IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KARI T. MORRISSEY, as Personal Representative
of the Estate of MICHAEL CRESPIN, deseased,

    Plaintiff,

v.                                                         No. 8-CV-246 WJ/RHS

ROBERT ULIBARRI, HARVEY J. FEATHERSTONE,
M.D., MONIQUE GIBSON, M.D., STACEY COREY,
DANNA TAPIA, and ELIZABETH BURNETT, M.D.,
in their individual capacities, WEXFORD HEALTH
SOURCES, INC., CHRISTINE VALLEJOS and
JOSEPH ROMERO,

    Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS CHRISTINE VALLEJOS AND JOSEPH ROMERO'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court on Defendants Christine Vallejos and Joseph Romero's Motion for Summary Judgment (Doc. 141). While he was an inmate in New Mexico state prison, Michael Crespin was diagnosed with colon cancer. Over the course of several months, Crespin missed numerous medical appointments at the University of New Mexico Hospital where he was being treated. As a result, Crespin sued the Defendants for the violation of his Eighth Amendment right to be free from cruel and unusual punishment and for various tort claims in violation of New Mexico law. In July 2008, Crespin died and Kari Morrissey entered her appearance as the personal representative of Crespin's estate. Defendants Christine Vallejos and Joseph Romero, both former wardens of the prison in which the decedent was housed, subsequently filed this Motion for Summary Judgment. On April 27, 2010, the Court held a

hearing on this Motion. After considering the written and oral arguments of counsel, the Court GRANTS Defendants' Motion for Summary Judgment.

## BACKGROUND

In 2005, Michael Crespin was arrested on various drug charges and booked at the Metropolitan Detention Center in Albuquerque, New Mexico. Shortly after his arrival, Crespin complained of abdominal pain. Doctors at the University of New Mexico Hospital ("UNM Hospital") diagnosed him with colon cancer and performed emergency surgery in January 2006. Following the surgery, the doctors prescribed various medications as well as a series of chemotherapy treatments.

In March 2006, during the course of his chemotherapy treatments, Crespin was transferred to Central New Mexico Correctional Facility in Los Lunas, New Mexico ("CNMCF") to begin his three-year sentence. Initially, Crespin was placed in the general population pod. While in general population, Crespin missed multiple appointments—possibly as many as a dozen—at UNM Hospital over the course of several months. In August 2006, Crespin was moved to the long-term care unit in the prison complex. He was able to attend his appointments at UNM Hospital with more regularity, but he still missed occasional appointments. Plaintiff alleges that Defendants "prevented Mr. Crespin from receiving his medications, properly maintaining his colostomy bag, attending highly critical chemotherapy appointments, and receiving follow-up surgery in a timely manner." Response, at 2.

CNMCF houses a medical facility, including a hospital and a long-term care unit, on its grounds. Wexford Health Sources ("Wexford"), a private company which had contracted with the State, staffed and operated the medical facility at the time. Wexford provided medical care to all inmates, regardless of whether they were housed in a general population pod or the long-

term care unit.  Occasionally, inmates would need to attend off-site medical appointments.  When an inmate needed to attend an appointment at UNM Hospital, the patient services assistant at UNM Hospital would contact Wexford's off-site coordinator to schedule the appointment.[1] Before scheduling the appointment, the off-site coordinator would need approval from a Wexford physician or the regional medical director.  Once the off-site coordinator scheduled the medical appointment, she would send the schedule to the prison transport department.  The transportation department, in turn, would ensure that the inmate was transported to his scheduled appointment in a safe and timely manner.

During the course of Crespin's incarceration, three different wardens oversaw the operations at CNMCF.  When Crespin arrived at CNMCF in March 2006, Mr. Joseph Romero held the position of warden.  Romero continued to act as warden until October 16, 2006.[2]  After Romero's departure, Deputy Warden Christine Vallejos became temporary Acting Warden for about a month.  In mid-November 2006, Robert Ulibarri took over as Warden at CNMCF. Plaintiff sued all three wardens as part of this lawsuit, asserting claims under the Eighth Amendment by way of 42 U.S.C. § 1983 and asserting medical malpractice, negligence, gross negligence, recklessness and wrongful death claims under the New Mexico Tort Claims Act. Defendants Romero and Vallejos have filed the instant Motion for Summary Judgment in which

---

[1] At all relevant times, Debbie Suttie worked as UNM Hospital's patient services assistant and Stacy Corey worked as Wexford's off-site coordinator.

[2] October 16, 2006 was the last day that Romero physically reported to work.  From October 2006 to February 3, 2007, Romero spent his unused, accrued vacation time.  He officially retired on February 3, 2007.

they raise defenses of qualified immunity and sovereign immunity.[3]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. PRO. 56(c); *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. Once that burden is met, the nonmoving party must put forth specific facts showing that there is a genuine issue of material fact for trial; he may not rest on mere allegations or denials in his own pleadings. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256-57 (1986). In order to avoid summary judgment, the nonmoving party must put forth enough evidence that a reasonable jury could return a verdict in the nonmovant's favor. *Id.* at 249. A mere scintilla of evidence in the nonmovant's favor is not sufficient. *Id.* at 252.

When a defendant moves for summary judgment on the basis of qualified immunity, the plaintiff bears a heavy two-fold burden. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). The plaintiff must put forward evidence showing (1) that the defendant violated plaintiff's constitutional rights, and (2) the right at issue was clearly established at the time of the violation. *Id*. If the plaintiff fails to establish either part of the two-part inquiry, the court must grant the defendants qualified immunity. *Id.* Courts have discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009).

---

[3] Defendant Ulibarri, the current warden, has also filed a separate Motion for Summary Judgment (Doc. 95).

**DISCUSSION**

**I.     Eighth Amendment**

Plaintiff first asserts that Defendants violated his right under the Eighth Amendment to be free from cruel and unusual punishment. A prison official violates the Eighth Amendment when he acts with deliberate indifference toward a substantial risk of serious harm to the inmate. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The Supreme Court has likened deliberate indifference to criminal recklessness. To be guilty of deliberate indifference, a prison official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. Furthermore, the prison official must have been personally involved in the Eighth Amendment violation. *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."). Plaintiff cannot succeed on his claims merely by showing that the officials were in charge of other state actors who violated decedent's Eighth Amendment rights. *Spencer v. Landrith*, 315 Fed.Appx. 62, 65 (10th Cir. 2009). In order to survive summary judgment on his Eighth Amendment claim, then, the Plaintiff must show that each Defendant intentionally disregarded an excessive risk of danger to the decedent. If the evidence shows that the Defendants either did not know of the risk or took no action disregarding that risk, then Defendants are entitled to summary judgment in their favor. Here, Plaintiff's Eighth Amendment claims against Defendant Romero and Defendant Vajellos fail because Plaintiff cannot show that either Defendant knew Crespin was missing appointments or not receiving the necessary medical care.

Romero. Defendant Romero held the position of warden from March 2006, when Crespin initially arrived at CNMCF, until mid-October 2006. Plaintiff argues that Romero knew of Crespin's repeated missed appointments at UNM Hospital and acted with deliberate

indifference by ignoring the problem. Despite Plaintiff's assertions, there is simply no admissible evidence before the Court showing that Romero knew that Crespin was missing appointments at UNM Hospital. Romero did not remember Crespin and repeatedly testified that he never heard any complaints about inmates not making it to their off-site medical appointments. Exhibit A, at 16, 28 & 37. Plaintiff tries to impute such knowledge to Romero based on a collection of suggestive facts. First, Romero testified that he made rounds through the entire CNMCF complex several times a week and frequently chatted with inmates and patients during his rounds. *Id.* at 9-10. Second, Romero held a weekly staff meeting which was always attended by a Wexford representative. *Id.* at 11. Third, Romero acknowledged that issues of off-site transportation were a high priority for wardens due to their security dimensions. *Id.* at 33. Plaintiff asks the Court to infer from these facts that Romero *must have* learned about Crespin's missed appointments—either from Crespin himself on Romero's weekly rounds, a Wexford representative during the staff meetings, or a transportation officer. The Court declines to do so. Plaintiff has not put forth any evidence that anyone *actually* told Romero about Crespin's missed appointments. Plaintiff had the opportunity during discovery to locate a transportation officer or Wexford representative who could testify that Romero knew about Crespin's situation. As they stand, however, these facts alone do not give rise to the inference that Romero *actually* knew about Crespin's situation.[4]

More convincingly, Plaintiff asserts that two employees of UNM Hospital personally contacted Romero to inform him of Crespin's missed appointments and to urge him to deliver

---

[4] At most, these facts might support a claim of negligent supervision. As Defendant points out, however, negligent supervision alone cannot support a claim of deliberate indifferent under the Eighth Amendment. *See Spencer v. Landrith*, 315 Fed. Appx. 62, 65 (10th Cir. 2009) ("The theory of negligent supervision cannot provide a basis for liability under § 1983.").

Crespin to the Hospital for his scheduled appointments.[5] While this evidence is the kind of specific evidence necessary to defeat Defendant's Motion for Summary Judgment, the evidence suffers from other fatal flaws.

First, Holly Rice, a nurse at UNM Hospital, testified that she wrote several letters to Romero emphasizing the need for Crespin to attend his scheduled appointments. Exhibit G, at 21. While the Court assumes that Rice did write several letters to Warden Romero, there is no evidence that Romero ever received those letters. Rice testified that she had "no idea" whether her letters ever reached Romero. *Id.* at 25. She did not keep any copies of the letters and she has no documentation, such as a certified mail receipt, that the letters were received. Romero, on the other hand, testified that he never spoke with Holly Rice. Exhibit A, at 17 ("Q. And what about Holly Rice? Have you ever spoken to her? A. I'm sorry. Can you repeat the name? Q. Holly Rice. A. No, I don't recollect the name."). The parties presented no evidence regarding how letters addressed to the warden are typically handled. In a large prison facility such as CNMCF, it is likely that such letters are filtered by the mail department and discarded or redirected if they do not warrant the warden's attention. Alternatively, the letter may have never reached CNMCF at all if Rice used an incorrect mailing address. Without any evidence that Romero actually received Rice's letters, the Court cannot presume that Romero knew of Crespin's missed appointments.

Second, Plaintiff asserts that Dr. Yehuda Patt, Crespin's treating physician, personally

---

[5] Plaintiff also submitted the testimony of Crespin's brother, Elfido Crespin, who alleges that he called the prison to complain about his brother's missed appointments. He testified: "I talked to a sergeant that was way up above in the—you know, like he was the head of the whole system." Exhibit 7, at 67, 69. When asked, however, Elfido Crespin could not recall the name of the man with whom he spoke. *Id.* For obvious reasons, this evidence is insufficient to establish that Elfido Crespin personally spoke with warden Romero.

called Romero to complain about Crespin's missed appointments.  As evidence, Plaintiff submitted Crespin's medical records from UNM Hospital.  In a report written by Holly Rice in November 2006, Rice writes: "The patient's course of treatment has been severely impaired due to difficulties with transportation and other issues at [CNMCF], in spite of the fact that Dr. Yehuda Patt has talked personally with the office of the warden, Mr. Joe Romero.  He verbalized that he would certainly arrange for transport.  Nonetheless, the patient has missed multiple chemotherapy treatments."  Exhibit 4, at 1.  Defendants argue that this statement is inadmissible hearsay because it is a third-party's description of a purported conversation between Dr. Patt and Romero.  Plaintiff counters that the statement falls within the hearsay exception for statements made for the purpose of medical diagnoses or treatment.  FED. R. EVID. 803(4).

     This Court agrees with Defendants that the statement is inadmissible hearsay.[6]  Rice's statement was not made for the purpose of diagnoses or treatment and, therefore, does not fall under the hearsay exception carved out by Rule 803(4).  Furthermore, the exception generally exists to protect statements made by the *patient* (or on the patient's behalf) to his medical provider, not statements made by the treating physician or attending nurse.  The rationale behind the exception is that patients have a motive to be truthful because the quality of their medical care depends on the accuracy of the information they provide to their doctors.  *See U.S. v. McHorse*, 179 F.3d 889, 900 (10th Cir. 1999) ("Because a patient's medical care depends on the accuracy of information she provides to her doctors, the patient has a motive to be truthful."); *U.S. v. Pacheo*, 154 F.3d 1236, 1240 (10th Cir. 1998) ("The rationale behind the Rule 803(4) exception is that because a patient's medical care depends on the accuracy of the information she

---

[6] In fact, as Defendants point out, the portion of the statement purporting to set forth what Romero said is inadmissible hearsay within hearsay.

provides, the patient has a selfish motive to be truthful; consequently, a patient's statements to her physician are likely to be particularly reliable."). The statement proffered by Plaintiff was made by Rice, Crespin's nurse, rather than by Crespin himself. Rice's statement about the purported conversation between Dr. Patt and Romero bears no indicia of reliability similar to that of a patient's description of his symptoms to his doctor. In order to properly present this evidence to the Court, Plaintiff would have had to obtain an affidavit or deposition testimony from Dr. Patt herself. No such evidence was presented.[7]

Therefore, Plaintiff has not put forth any admissible evidence showing that Romero knew about Crespin's missed appointments. The collection of suggestive facts asserted by Plaintiff are insufficient to raise the inference that Romero knew about Crespin's illness, let alone knew about Crespin's repeated missed appointments. Rice's assertion that she wrote several letters to Romero, while presumably true, does not necessarily mean that Romero ever received those letters. Finally, Rice's description of a purported conversation between Dr. Patt and Romero is inadmissible hearsay. Because Plaintiff has not put forth any evidence that Romero knew of Crespin's situation, Plaintiff cannot show that Romero was deliberately indifferent to Crespin's medical needs. Therefore, Defendant Romero is entitled to summary judgment on Plaintiff's Eighth Amendment claim.

<u>Vallejos</u>. For similar reasons, Plaintiff cannot show that Defendant Vallejos was deliberately indifferent to Crespin's medical needs. In fact, Plaintiff presents far less evidence

---

[7] At the hearing, Plaintiff's counsel argued that this Court could still consider the hearsay evidence at the summary judgment state as long as the statement could be admissible at trial in a non-hearsay form—such as live testimony from Dr. Patt. The Tenth Circuit has rejected this argument, however, and I need not consider it further. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209-1210 (10th Cir. 2010).

with respect to Vallejos than Romero. Christine Vallejos worked as deputy warden except for a brief stint as Acting Warden for about a month—from mid-October to mid-November 2006. Like Romero, Vallejos testified that she did not recall receiving any complaints about inmates not receiving medical treatment or not making it to off-site appointments. Exhibit B, at 46. In fact, Vallejos testified that it was not the warden's job to ensure that inmates were receiving necessary medical treatment because the wardens were not doctors and not qualified to assess an inmate's medical needs. *Id.* at 38-39 (noting that wardens would typically inspect for things like security, sanitation, general maintenance and staff issues). Like Romero, Vallejos visited the long-term care unit occasionally and attended weekly staff meetings. *Id.* at 11. As discussed above, however, these facts alone cannot give rise to the inference that Vallejos somehow knew about Crespin's medical condition. Furthermore, neither Dr. Yehuda Patt, Holly Rice or anyone else from UNM Hospital claims to have communicated with Vallejos about Crespin's missed appointments. Finally, even if UNM Hospital personnel had communicated with Romero, there is no evidence that Romero conveyed the contents of those conversations to Vallejos when she took over as warden. *Id.* at 34-35, 47, 49. Because Plaintiff has not put forth any evidence that Vallejos knew about Crespin's missed appointments, Plaintiff cannot show that Vallejos was deliberately indifferent to Crespin's medical needs. Accordingly, Defendant Vallejos is entitled to summary judgment in her favor on Plaintiff's Eighth Amendment claim.

**II.    Tort Claims**

Plaintiff is also suing Defendants Romero and Vallejos for medical malpractice, negligence, gross negligence, recklessness and wrongful death under the New Mexico Tort Claims Act. Second Amended Complaint, at 1 (Doc. 101). The New Mexico Tort Claims Act makes all New Mexico state officials immune from tort actions except in eight designated

classes of action; in these eight categories, the state has specifically waived its immunity. *See Ward v. Presbyterian Healthcare Services*, 72 F.Supp.2d 1285, 1292 (D.N.M. 1999). Here, Plaintiff claims that § 41-4-9 of the New Mexico Tort Claims Act specifically waives these Defendants' immunity from suit for negligence in the operation of a medical facility.[8]

Section 41-4-9 waives New Mexico's immunity for damages "caused by the negligence of public employees while acting within the scope of their duties in the operation of any hospital, infirmary, mental institution, clinic, dispensary, medical care home or like facilities." Defendants do not deny that the long-term care unit at CNMCF qualifies as a hospital, infirmary or medical clinic within the definition of § 41-4-9. Rather, Defendants argue that Wexford, rather than CNMCF, operated the long-term care unit and CNMCF had no supervisory authority over Wexford or its employees.

It is undisputed that Wexford is a private company and its employees are private employees. It is also undisputed that the doctrine of *respondeat superior* applies to claims under the New Mexico Tort Claims Act. *See Silva v. State*, 745 P.2d 380, 385 (N.M. 1987). If the Defendants, as wardens of CNMCF, exercised supervisory authority over Wexford, then they could be held liable under § 41-4-9 for any negligence in failing to properly supervise Wexford.

---

[8] Initially, Plaintiff appealed to a different provision for the basis of New Mexico's supposed waiver of its sovereign immunity. In his Second Amended Complaint, Plaintiff cited to § 41-4-6 of the New Mexico Tort Claims Act in which New Mexico waives its immunity for liability in the operation and maintenance of buildings, public parks, machinery, equipment and furnishings. Second Amended Complaint, at ¶ 68. Plaintiff appears to have dropped this argument, however, because he did not mention this provision in his Response to Defendants' Motion for Summary Judgment. In any case, as Defendants convincingly argue, § 41-4-6 only applies to claims that deal primarily with physical defects or dangerous conditions in state-run buildings. It does not apply to administrative decisions affecting only one individual. *See Wittkowski v. State Corr. Dep't*, 710 P.2d 93 (N.M. Ct. App. 1985); *Archibeque v. Moya*, 866 P.2d 344 (N.M. 1993).

For example, if Defendants' duties included "staffing, training and provision" for Wexford's facilities, then Defendants could be held liable for any negligence in these duties. *Id.*

Plaintiffs, however, have put forth no evidence that former warden Romero or Vallejos had any supervisory authority over Wexford's employees. In fact, the undisputed evidence shows that the Defendants had no role in hiring Wexford employees nor in supervising their conduct. Romero testified that an administrator from Santa Fe supervised Wexford's adherence with the terms of its contract with the State, *see* Exhibit A, at 22, while Wexford's own manager supervised the day-to-day operation of its facilities.[9] *Id.* at 23. Vallejos testified that the interface between Wexford and the prison occurred at the Central Office in Santa Fe "at pay grades much higher than [the warden's]." Exhibit B, at 44-45. Plaintiff relies on generic assertions by the Defendants that, as wardens, they were responsible for the entire prison complex. *See* Exhibit A, at 29; Exhibit B, at 25. This generic evidence, however, is insufficient to show supervisory authority. As the New Mexico Supreme Court has held, the Tort Claims Act's waiver of immunity only comes into play when the public employee has "the right to control the manner in which the details of the work are to be done." *Silva*, 745 P.2d at 385.

In a case with very similar facts, the New Mexico Court of Appeals held that the plaintiff could not sue the City of Albuquerque for providing inadequate medical care to an inmate because the infirmary (at which the inmate allegedly received inadequate medical care) was operated by a private company rather than the City itself. *Lessen v. City of Albuquerque*, 187 P.3d 179, 185 (N.M. App. Ct. 2008). Accordingly, the court held that the immunity waiver contained in § 41-4-9 did not apply. *Id.* Similarly, here, Plaintiff cannot sue state officials under

---

[9] Defendant Vallejos also referenced a "deputy warden of administration" who oversees CNMCF's contracts. Exhibit B, at 41.

12

§ 41-4-9 without presenting some evidence that those officials had supervisory power over the privately-run medical facility.  Without such evidence, the Court concludes that the sovereign immunity waiver of § 41-4-9 does not apply.  Therefore. Defendants are entitled to sovereign immunity with respect to Plaintiff's state law tort claims.

Furthermore, although this issue was not raised by either party, Defendants Romero and Vallejos enjoy immunity to state tort claims brought in federal court under the Eleventh Amendment—in addition to the immunity granted them by the New Mexico Tort Claims Act. *See Edelman v. Jordan,* 415 U.S. 651, 662-633 (1974) (noting that Eleventh Amendment precludes suit against an unconsenting state in federal court).  Therefore, even if § 41-4-9 of the New Mexico Tort Claims Act waives the State's legislatively granted immunity with respect to tort claims brought in *state* court, that provision does not waive the State's Eleventh Amendment immunity from suit in *federal* court.  A separate provision of the New Mexico Tort Claims Act specifically states that nothing in the Act "shall be construed . . . as a waiver of the state's immunity from suit in federal court under the eleventh amendment to the United States constitution."  N.M. STAT. ANN. § 41-4-4(F) (1978).  *See also* § 41-4-18A ("Exclusive original jurisdiction for any claim under the Tort Claims Act shall be in the district courts of New Mexico.").  As the United States Supreme Court has noted, a State "does not consent to suit in federal court merely by consenting to suit in the courts of its own creation."  *College Savings Bank v. Fl. Prepaid Postsecondary Education Expense Bd.*, 527 U.S. 666, 675 (1999).  The New Mexico Tort Claims Act, to the extent it applies, clearly waives the State's immunity to suit only in state court.  *See Ward*, 72 F.Supp.2d. at 1293 (D.N.M. 1999) (noting that nothing in the New Mexico Tort Claims Act waives the State's Eleventh Amendment immunity from suit in federal court); *Bishop v. John Doe 1*, 902 F.2d 809, 810 (10th Cir. 1990) (same).  For this additional reason, Defendants Romero and Vallejos are entitled to

Eleventh Amendment sovereign immunity with respect to Plaintiff's state law tort claims.

## CONCLUSION

For the foregoing reasons, this Court GRANTS the Motion of Defendants Christine Vallejos and Jose Romero for Summary Judgment (Doc. 141). Plaintiff has not presented sufficient evidence that either Defendant knew of Crespin's medical condition or his missed appointments and, therefore, Plaintiff's Eighth Amendment claim fails. In addition, Defendants Vallejos and Romero are entitled to sovereign immunity with respect to Plaintiff's state law tort claims. Accordingly, summary judgment shall be entered in favor of Defendants Vallejos and Romero and they shall be dismissed from this case.

**SO ORDERED.**

UNITED STATES DISTRICT JUDGE